IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. LLOYD ALFRED NEWTON, | § | |
| *Plaintiff,* | § | 5:24-CV-00758-OLG-RBF |
| vs. | § | |
| ERIN S. BECKER, | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Order concerns Defendant Erin S. Becker's Motion to Dismiss (the "Motion"). *See* Dkt. No. 11. The District Judge referred certain pretrial matters for resolution by the Magistrate Judge, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 5. Authority to enter this order stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Motion to Dismiss, Dkt. No. 11, should be **GRANTED.**

### Factual and Procedural Background

Plaintiff, Dr. Lloyd Alfred Newton, formerly an Associate Professor at Benedictine College, graduated law school in the fall of 2022. Dkt. No. 1 at 2. While Newton was applying for licensure as an attorney in the State of Texas, Defendant Erin S. Becker, a former undergraduate student at Benedictine College, sent a letter by email to the Texas Board of Law Examiners ("TBLE") regarding Newton's application. *Id.* at 3; *see also* Dkt. No. 1-1 (Letter to

the TBLE). In the letter, dated November 30, 2022, Defendant Becker explained that she had "concerns about [Newton's] licensure as an attorney." Dkt. No. 1-1 at 2.

Becker's letter, which is attached to the live complaint, detailed her concerns regarding Newton's behavior during his time at Benedictine College. Among topics discussed were events at a conference attended by Becker, who was then a 20-year-old undergraduate at Benedictine. *Id*. According to the letter, Newton, then a "member of the Philosophy department," also attended the conference and would wink at Becker during conference dinners and tried multiple times to arrange to be alone with her. *Id*. Becker found Newton's "advances to be inappropriate and frankly creepy" but did not report his actions at that time. *Id*.

The letter next addressed events back at Benedictine College after the conference concluded. Becker, the letter explained, attended an evening mass. Newton did too. He stared at her "through out [sic] the mass," her letter explained, "and then approached [her] after to apologize for his inappropriate behavior." *Id*. At this point, Becker says she was "determined to put it behind [her] and just avoid him in the future." *Id*.

But Becker's "perspective changed when [she] learned from [her] freshman suitemate that [Newton] was at parties providing alcohol to freshman girls and talking to them one on one in his office about their personal lives." *Id*. Becker, according to her letter, reported her concerns to the university. She "was told this wasn't the first complaint against [Lloyd] Newton but that the other women were not interested in pursuing anything further than 'having it noted in his file.'" *Id*. Becker also "soon learned," the letter continued, "that there was another student who was actually tutoring his daughter and that he had crossed boundaries with her." *Id*.

At this point, "things got worse." *Id*. Benedictine College eventually investigated Newton, and "he was removed from campus." *Id*. According to the letter, a loaded firearm was

found in his office when it was cleaned out. *Id*. A dean at the college called Becker "about the firearm" and informed her "that Lloyd Newton was very upset with [her]" and, it appears, another woman who came forward. *Id*. The dean also informed Becker, who lived "just off-campus," that the dean "would have security do extra patrols by [Becker's] house for [her] safety." *Id*.

Becker's letter explained that Newton, after his removal from campus, would frequent the coffee shop at which Becker worked "and would sit at the table across from the counter and just stare at [her] for hours." *Id*. "Sometimes he would just stare," the letter stated, "and other times he would verbally harass [her], certainly an intimidation technique." *Id*. Becker's letter reported that she became so concerned for her safety that she would "ask [her] coworkers to cover the front so [she] could hide next to the ice cream freezer in the back, so [she] didn't have a panic attack." *Id*. at 2-3.

The letter related that Becker initially "was called to testify in [Newton's] administrative hearing at the college" and that, allegedly, "[w]ithin minutes" of sitting down with Newton, his attorney, and the president of Benedictine College, "it was clear [Newton] just wanted me to disparage the other woman who came forward." *Id*. at 3. Becker stated in her letter that she refused to do so and "was excused and did not have to testify in front of a panel of teachers." *Id*. Newton was ultimately terminated from Benedictine College. *See id*. Newton's Complaint, notably, provides that he "left" the college. Dkt. No. 1 at 2. But in his Response to the Motion, Newton acknowledges that he was terminated from Benedictine in 2014, but states that this termination had to do with the loaded gun he kept in his desk in violation of school policy, not Becker's complaint. *See* Dkt. No. 12 at 2 n.2.

3

Becker's letter explained that she later graduated from Notre Dame Law School and served as a judicial law clerk in North Carolina. Dkt. No. 1-1 at 3. During her judicial clerkship, Newton sent her a request to "connect" on LinkedIn, which she denied. This "brash action," her letter noted, "shocked [Becker]." *Id*. When Becker learned of Newton's application to the Texas bar, she became concerned at the prospect of Newton becoming a licensed attorney and possibly preying upon vulnerable clients, and of his being "in a position of power over victims and defendants" in a potential role as prosecutor. *Id*. at 3-4. Becker's letter therefore "urge[d]" the TBLE to "look into [Newton's background] carefully when making [its] decision for licensing." *Id*. at 4. In a follow up email to the TBLE, Becker requested that she remain anonymous. Dkt. No. 1-2.

In early January 2023, the TBLE notified Newton that he "would have to appear before a Character and Fitness Hearing before he was licensed to practice law." Dkt. No. 1 at 4. Newton avers that he was "notified in January of 2023 about the email" Becker sent but not provided a redacted copy until April 5, 2023. *Id*. at 3. He alleges that because the copy given to him was redacted, he was "prevented from knowing the identity of the person who previously sent the email in 2022." *Id*.

The TBLE informed Newton in April 2023 of his passage of the Texas bar examination. *Id*. at 5. Newton avers in his live complaint that, at that time, he had fulfilled all requirements for qualification as an attorney in Texas, and that his licensure was at that point contingent upon the outcome of his Character and Fitness hearing. *Id*. The complaint further avers that, due to the need to conduct the hearing, which was not held until October of that year, Newton's receipt of his law license was delayed by six months. *Id*. As a result, he alleges, he lost his job with the Law Offices of Ryan Henry, PLLC in San Antonio, Texas, which had promised him employment

on the condition that he pass the February 2023 bar exam and become licensed to practice law by May 2023. *Id*. at 4-5.

On October 6, 2023, the TBLE informed Newton that it would conduct the Character and Fitness hearing on October 20, 2023. *Id*. at 5. Within the same notification, the TBLE disclosed the full unredacted email and letter and identity of its author. *Id*. The hearing was held on the scheduled date, at the end of which the TBLE cleared Newton to practice law. *Id*.

Newton filed the present action on July 9, 2024, invoking diversity jurisdiction and alleging that Becker defamed him in the letter she sent to the TBLE. *See id*. at 5-8 (listing the elements for defamation under Texas law and explaining their potential application to this case).

In his live complaint, Newton notes that Becker sent her letter to the TBLE the day after Newton "sent an email to the City Commissioners, City Manager, and City Attorney for the City of Atchison, Kansas, in an attempt to comply with the Kansas Tort Claim Act and to provide notice that he, Lloyd Newton, was going to exercise his First Amendment Rights and sue the City for Illegally Searching a rental property of his and withholding water service at a second rental property without any due process." *Id*. at 3. A footnote in Newton's live complaint notes that Newton "believes that Ms. Becker's actions were motivated, or at least prompted by defendants in, the underlying lawsuit against the City of Atchison, thereby calling into question her motivation and *mens rea* for the cause of action at issue in the present lawsuit." *Id*. at 3 n.2.

Becker filed the present Motion to Dismiss, arguing for dismissal on the following grounds: (1) lack of personal jurisdiction; (2) improper venue; and (3) failure to state a claim. *See* Dkt. No. 11. Newton responded. *See* Dkt. No. 12. After an Initial Pretrial Conference discussing various issues raised in both filings, as well as confirming with the parties that no amended complaint would be forthcoming, the Court imposed an administrative stay and closure

of the case. Dkt. No. 21. The Court also indicated at the Initial Pretrial Conference that the stay

would remain in place so long as the Motion to Dismiss remained pending.

Upon initial review of the Complaint and Motion to Dismiss, the Court became

concerned that the lawsuit might be time-barred by the one-year statute of limitations for

defamation under Texas law. The Court ordered limited discovery and directed the parties to

check in with the Court upon completion of that discovery. Dkt. No. 26. The parties complied,

and they informed the Court at a status conference of their mutual wish for the Court to move

next to the merits of the pending Motion to Dismiss. The Court's considerable concerns about

limitations, however, remain. *See id*. They will not be addressed here, however, as the Court

instead addresses the Motion to Dismiss.

## Discussion

For the reasons provided herein, Plaintiff Newton has established personal jurisdiction

and venue. And Defendant Becker's arguments for dismissal under Texas Civil Practice &

Remedies Code § 27.001 *et seq*., § 73.055(a), and § 73.055(c) are unpersuasive. There is much to

discuss when it comes to Texas privileges. Ultimately, however, Becker has established that her

communication to the TBLE is absolutely privileged. The Motion to Dismiss, Dkt. No. 11,

should therefore be **GRANTED**.

### A.    The Court Has Personal Jurisdiction Over Becker.

1.    *The standards for personal jurisdiction are familiar and not meaningfully

in dispute*. "A court must have the power to decide the claim before it (subject-matter

jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a

case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) (citation omitted). Federal

Rule of Civil Procedure 12(b)(2) authorizes parties to move to dismiss a case for lack of personal

jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985) (citation omitted). "When the district court rules on the motion [to dismiss for lack of personal jurisdiction] without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citation omitted).

"The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (internal quotations and citation omitted). "Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 623 n.2 (5th Cir.1999).

"A 'federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute' allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Id.* (citation omitted).

"Federal due process requires a plaintiff to prove two things. First, the plaintiff must show that the non-resident defendant 'purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state,'" and "[s]econd, the plaintiff must show that the 'exercise of jurisdiction . . . does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)).

Regarding the first requirement, "[t]here are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "General personal jurisdiction applies only when a defendant is essentially at home, and any and all claims may be brought against a defendant wherever it is subject to such jurisdiction." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024) (citing *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021)) (internal quotations omitted). General personal jurisdiction "attaches when the defendant's contacts with the forum state are 'continuous and systematic.'" *Lewis*, 252 F.3d at 358 (quoting *Wilson,* 20 F.3d at 645). Because Defendant in this case merely emailed a state agency in Texas and did not pass through, reside in, do business within, or otherwise maintain systematic or continuous contacts with the state, general personal jurisdiction is not at issue here, a conclusion to which both parties appear to agree. *See* Dkt. No. 11 at 4-8; Dkt. No. 12 at 3-6 (discussing the requirements for specific personal jurisdiction).

Specific jurisdiction, on the other hand, applies "(1) [when] the defendant has minimum contacts with the forum state, *i.e.*, [when] it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) [when] the

plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) [when] the exercise of personal jurisdiction is fair and reasonable." *Shambaugh & Son, L.P.*, 91 F.4th at 372 (citing *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020)). "If a plaintiff establishes the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable." *Id.* (citing *E. Concrete Materials, Inc*, 948 F.3d at 296) (quotations omitted). Although the defendant's contacts with the forum must be "more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person,'" even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." *ITL International, Inc. v. Constenla*, *S.A.*, 669 F.3d 493, 499 (5th Cir. 2012) (citation omitted). "The guiding principle of specific personal jurisdiction is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Shambaugh & Son, L.P.*, 91 F.4th at 372 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980)).

   **2.** *This Court has specific personal jurisdiction over Becker*. The Court agrees with Newton that "this Court has personal jurisdiction over [Becker] insofar as she [allegedly] committed a tortious act in Texas." Dkt. No. 1 at 2 (citation omitted). Both prongs of the two-step federal due process inquiry under *Halliburton* have been satisfied. *See Halliburton Energy Servs., Inc.*, 921 F.3d at 539. Specifically, Newton has shown that Becker maintained minimum contacts for purposes of specific personal jurisdiction by showing that Becker directed her activities towards the forum state, *i.e.*, established minimum contacts with the state, and that his claim arises out of or results from Becker's forum-related contacts. *See Shambaugh & Son, L.P.*, 91 F.4th at 372. Becker does not carry her corresponding burden to show that the exercise

9

of personal jurisdiction would be unfair or unreasonable. *Id*. For the same reasons, the Court has no reason to believe that an exercise of personal jurisdiction here would offend notions of fair play and substantial justice.

Newton bears the burden of satisfying the first two prongs of the minimum contacts analysis for specific personal jurisdiction, which requires a showing that "(1) the defendant has minimum contacts with the forum state, *i.e.*, [ ] it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; [and] (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Id*. (citation omitted). There is no dispute that the letter in question was directed towards and circulated within the State of Texas, between TBLE examiners, staff, and Plaintiff Newton, all of whom work and most likely reside in the state, and for the purposes of conducting a regulatory function on behalf of and within the State of Texas. *See* Dkt. No. 1. Becker is also availing herself—whether this case is prosecuted in Texas or elsewhere—of a privilege under substantive Texas law, *i.e.*, the privilege that attaches, whether it be absolute or qualified, when communicating sensitive information about a bar applicant to the TBLE. *See* Dkt. No. 11 at 10-13. And Newton's claim clearly relates to or arises out of the letter's communication to the TBLE. Dkt. No. 1. Thus, Newton has carried his burden of showing specific personal jurisdiction over Becker.

Becker fails to show that the exercise of personal jurisdiction here would be unfair or unreasonable, or that it would offend the traditional notions of fair play and substantial justice. Becker submitted a long, detailed letter to the TBLE detailing serious allegations about Newton's personal history and character. Becker directed statements, which Newton alleges are tortious, towards the forum state and with an expectation that, as a consequence, Newton could be barred

from licensure as an attorney under the laws of the forum state. Becker therefore purposefully availed herself of the laws and protections of the State of Texas in connection with the precise subject matter of this action. She should have anticipated that her actions might cause her to be haled into courts in Texas, *i.e.*, that Newton might seek some kind of recourse in court as a result of her communication. *See Shambaugh & Son*, 91 F.4th at 372; *see also Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 648 (W.D. Tex. 2019) ("*Walden* reaffirmed long-standing Fifth Circuit principles that committing a tort in whole or in part in Texas will give rise to specific jurisdiction here.") (citing *Walden v. Fiore*, 571 U.S. 277 (2014)).

Accordingly, Newton has established minimum contacts for purposes of establishing personal jurisdiction, and for the same reasons discussed above, an exercise of personal jurisdiction would not offend notions of fair play and substantial justice. *Halliburton Energy Servs., Inc.*, 921 F.3d at 539. The Court may exercise personal jurisdiction over Becker.

**B.      Venue is Proper in the Western District of Texas.**

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for improper venue. *See* Fed. R. Civ. P. 12(b)(3). When deciding a Rule 12(b)(3) motion, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citation omitted). "However, the Court may consider evidence in the record beyond the facts alleged in the [complaint] and its attachments, including affidavits or evidence submitted by [the defendant] in support of its motion to dismiss, or by [the plaintiff] in response to the motion." *Galderma Lab'ys., L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 605-06 (N.D. Tex. 2017) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008)).

11

Venue in federal court is generally governed by 28 U.S.C. § 1391.[1] Section 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." That provision is satisfied here because, although Becker resides in North Carolina and sent her letter from there, it is undisputed that the letter was sent to Texas, where it triggered a series of events in Texas and is alleged to have resulted in harm to Newton in Texas. *See generally* Dkt. No. 1; *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated.") (citing Restatement (Second) of Torts § 577A, Comment a (A.L.I. 1977)); *see also Tabor, Chhabra & Gibbs, P.A. v. Med. Legal Evaluations, Inc.*, 237 S.W.3d 762, 774 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (stating the same); *De Prins v. Van Damme*, 953 S.W.2d 7, 14 (Tex. App.—Tyler 1997, pet. denied) (stating the same). In other words, "a substantial part of the events . . . giving rise to the claim occurred" in the Western District of Texas.[2] Accordingly, the Court is unpersuaded by Becker's argument that venue cannot be proper under §1392.

### C. Becker's Arguments Under Texas Civil Practice & Remedies Code § 27.001 *et seq*., § 73.055(a), and § 73.055(c) Fail.

Becker argues, largely for error-preservation purposes, that she is entitled to invoke provisions of Texas's so-called anti-SLAPP law. Dkt. No. 11 at 14 (citing Tex. Civ. Prac. &

---

[1] There is some uncertainty regarding which party bears the burden to establish venue in the context of a motion to dismiss for improper venue. *See, e.g.*, *Galderma Lab'ys, L.P.*, 290 F. Supp. 3d at 605 (collecting cases). The Court does not, and need not, address this issue here because it is apparent that venue is appropriate in this Court regardless of which party has the burden.

[2] There is some question about whether venue is appropriate in this Division of the Western District of Texas, as the letter was sent to the TBLE in Austin, Texas. But Newton lives, and presumably suffered harm, in San Antonio, Texas. There is a Division of the U.S. District Court for the Western District of Texas in both Austin and San Antonio. The parties, however, don't raise the issue, and so the Court will not address it at this time.

Rem. Code § 27.002). This argument is foreclosed by binding Fifth Circuit precedent. In *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), the Fifth Circuit held that these provisions of Texas law do not apply in federal court. *Id*. at 245 (agreeing that Texas's anti-SLAPP "cannot apply in federal court" because the state statute conflicts with the Federal Rules). This Court is bound by that ruling, and Becker's arguments to the contrary therefore fail.

Becker also notes that § 73.055(a) of the Civil Practice & Remedies Code "provides that a person may maintain an action for defamation in Texas only if he 'has made a timely and sufficient request for a correction, clarification, or retraction,' or if the defendant 'has made a correction, clarification, or retraction.'" Dkt. No. 11 at 13 (quoting Tex. Civ. Prac. & Rem. Code § 73.055(a)). By the Court's reading, however, this provision does not mandate dismissal of Newton's claim because he couldn't possibly have complied with its requirements until it was too late. According to the live complaint, Newton didn't know the contents of the letter until well after a Character and Fitness hearing was already required by the TBLE. *See* Dkt. No. 1 at 3 ("It is important to note that even when Plaintiff was notified in January of 2023 about the email, he was not given a copy of the email until his attorney, Tricia Heil-Davis, forwarded a redacted copy of the email to him on April 5, 2023."), 4 ("Because of Ms. Becker's libelous letter to the Texas BLE, Newton was notified in late January of 2023 that he would have to appear before a Character and Fitness Hearing before he was licensed to practice law.").

A "correction, clarification, or retraction" would have been futile by the time Newton had enough information to even demand any such action; at that point, he was already scheduled for a Character and Fitness hearing with the TBLE and was warranted in believing that the hearing would be the right time and place to dispute the statements. Moreover, it is not clear what demanding correction, clarification, or retraction in the context of these TBLE proceedings

13

would look like. Was Newton expected to go around the TBLE process and make a personal demand on Newton to retract the statements? What effect would that have had on the TBLE proceedings? Becker's § 73.055(a) argument therefore is unavailing, and the same rationale makes Becker's argument with respect to § 73.055(c) similarly unavailing. *See* Tex. Civ. Prac. & Rem. Code § 73.055(c) (providing that exemplary damages will not be available when the person does not timely request correction, clarification, or retraction).

### D.    Familiar Standards Apply to the Rule 12(b)(6) Motion.

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a case in which the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotations and citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original). To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555-56). These factual allegations need not be highly detailed but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A conclusory complaint—one that fails to state material facts or merely recites the elements of a cause of action—may be dismissed for failure to state a claim. *See id*. at 555-56.

14

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). "A court is permitted, however, to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id*. (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

### E.    Texas Privileges Applicable to Judicial and Quasi-Judicial Proceedings Are Implicated.

Newton sues here for defamation, specifically libel, which is defamation in written form. "A claim for defamation under Texas law has three elements: The defendant (1) published a statement; (2) that was defamatory concerning the defendant; (3) while acting with actual malice (if the plaintiff was a public official or figure) or with negligence (if the plaintiff was a private individual) regarding the truth of the statement." *Cuba v. Pylant*, 814 F.3d 701, 713-14 (5th Cir. 2016) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)); *see also* Tex. Civ. Prac. & Rem. Code § 73.001; *Neely v. Wilson*, 418 S.W.3d 52, 60-61 (Tex. 2013) (stating that defamation includes both libel and slander and requiring the same elements for each). Becker urges dismissal because, she contends, Newton's complaint fails to account for either of

15

two privileges that attach under Texas common law: absolute or qualified privilege. *See* Dkt. No. 11 at 10-13.

Becker is correct that Texas common law "recognizes two classes of privilege applicable to defamation suits: absolute privilege and conditional or qualified privilege." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted); *see also* Dkt. Nos. 11 at 10-12; Dkt. No. 12 at 8-10. Both classes of privilege "are based on public policy concerns which elevate the good to be accomplished by the free and open exchange of information over the harm which may result from a falsehood." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987). Beker invokes both types of common law privilege here, conditional and absolute.

      **1.**    *Becker's invocation of the common law conditional privilege is premature*. The conditional privilege, also called a qualified privilege, is plainly implicated by the facts of this case. But this Court cannot adjudicate in a motion to dismiss a conditional privilege's applicability because a conditional privilege is an affirmative defense. *See, e.g.*, *50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.*, No. SA-95-CA-159, 1997 WL 790739, at *6 (W.D. Tex. May 20, 1997) ("In a case involving absolute privilege, a motion to dismiss may be granted if the privilege is apparent on the face of the complaint, but a defense of qualified privilege cannot be asserted by way of a motion to dismiss.") (citation omitted).

To explain, conditional or qualified privileges "are true privileges because they arise out of the occasion upon which the false statement is published. They do not rise to the level of an immunity." *Hurlbut*, 749 S.W.2d at 768. "Whether a conditional or qualified privilege exists is a question of law for the court." *Warren v. Fed. Nat'l Mortgage Ass'n*, 932 F.3d 378, 385 (5th Cir. 2019) (quotation and citation omitted). The Supreme Court of Texas has, in multiple decisions,

16

approvingly quoted from the Second Restatement of Torts the following definition for a common

law conditional privilege applicable in a case like the present one:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.

*Hurlbut*, 749 S.W.2d at 768 (citing Restatement (Second) of Torts § 598 (A.L.I. 1977)); *see also*

*Shell Oil Co.*, 464 S.W.3d at 655-56 (citing *Hurlbut*, 749 S.W.2d at 766). "This privilege is lost

if abused, such as when the statement is made *with malice and with knowledge of its falsity*."

*Shell Oil Co.*, 464 S.W.3d at 655 (emphasis added) (citation omitted).

Becker's Rule 12(b)(6) briefing and argument invoke a conditional privilege in

connection with the third element of a defamation claim, regarding the requisite degree of fault.

Dkt. No. 11 at 12. Becker's Motion contends Newton has failed to sufficiently plead that Becker

acted with actual malice. *Id*. This argument falters at the Rule 12(b)(6) stage because "[i]n Texas,

qualified privilege is an affirmative defense." *McIntosh v. Partridge*, 540 F.3d 315, 326 (5th Cir.

2008) (citation omitted). "[P]laintiffs are not required to anticipate or plead around affirmative

defenses." *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023) (citing *Gomez v. Toledo*, 446

U.S. 635, 640 (1980)).

Nor does Becker's argument benefit from federal pleading standards governing

allegations of malice. *See* Fed. R. Civ. P. 9(b). An allegation of actual malice is not required to

state a claim for defamation under Texas law, provided the claim is lodged by a private party as

opposed to a public figure. *See, e.g.*, *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 744

(5th Cir. 2019) (noting, "the status of the person alleging defamation determines the requisite

degree of fault. A private individual need only prove negligence, whereas a public figure or

17

official must prove actual malice."). Becker makes no argument that Newton is a public figure or even a limited public figure. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. Ackerman Mcqueen, Inc.*, No. 3:19-CV-2074-G, 2021 WL 3618113, at *12 (N.D. Tex. Aug. 16, 2021) (discussing public figures under Texas and federal law). Accordingly, to state a claim for relief Newton need only plead facts sufficient to meet each of the elements of a defamation claim brought by a private citizen, which do not require malice. At summary judgment, however, the issue of malice would no doubt be front and center.

> **2.**    *Rule 21(b) of the Rules Governing Admission to the Bar of Texas is implicated.* In addition to the common law conditional privilege, there also appears to be a privilege created under the Rules Governing Admission to the Bar of Texas that neither party has raised in their briefing. The privilege warrants consideration akin to that afforded a statutory privilege, it appears, because the Texas Supreme Court's "disciplinary rules should be treated like statutes." *O'Quinn v. State Bar of Tex.*, 763 S.W.2d 397, 399 (Tex. 1988) (citation omitted).

> In any event, Rule 21(b) of the Rules Governing Admission to the Bar of Texas provides:

> Records, statements of opinion, and other information regarding a Declarant, Applicant, or Probationary Licensee *communicated without malice* to the Board or to its members, employees, or agents by any person, entity, firm, or institution *are privileged*, and *civil suits for damages predicated thereon are barred*.

Tex. Rules Govern. Bar Adm'n R. 21(b) (emphasis added). This putative privilege, which appears on-point and more narrowly applicable than either of the common law conditional or absolute privileges, nonetheless raises questions for the Court.

As the Rule's text indicates, this privilege implicates the issue of malice. Yet, the privilege, by its plain terms, appears to provide immunity from suit akin to an absolute privilege. *See id.* (providing, "civil suits for damages . . . are barred"); *see also Hurlbut*, 749 S.W.2d at 768 ("An absolute privilege is more properly thought of as an immunity . . . ."). Under the common

18

law, an absolute privilege applies regardless of malice; "[i]t is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor." *Hurlbut*, 749 S.W.2d at 768.

Rule 21(b), therefore, appears somewhat self-contradictory. It grants, on the one hand, that "civil suits for damages are barred," which appears to embody a form of immunity from suit. Yet, on the other hand, it requires that the action undertaken was "without malice," which is more consistent with a conditional privilege. This tension in the text also implicates burdens. If the privilege is conditional, it is an affirmative defense for which a defendant would bear the burden. If it is absolute, in contrast, a defendant need only invoke it, and the plaintiff must then rebut it. In federal court at least, an absolute privilege might be analyzed at the Rule 12(b)(6) stage based on the allegations contained in the pleadings, taken as true.

The Court finds no guidance on Rule 21(b) in the parties' briefing and little meaningful guidance in Texas authorities. That lack of guidance and the practical implications of the Court's ruling on absolute privilege (provided below) give reason to proceed with caution. Deciding a question of Texas law, like the scope and meaning of Rule 21(b), apparently as a matter of first impression and without developed briefing from the parties, would be rash. The Court therefore declines to address this issue on the merits. The Court does pause to note, however, that if an absolute privilege does apply here, and the Court concludes next that it does, Rule 21(b)'s narrowly tailored privilege would make little sense as a practical matter unless it were also absolute privilege. What any such conclusion would mean for the Rule's text implicating the issue of actual malice is a question this Court does not address. But in Texas practice, the vast majority of cases implicating this privilege would surely be subject to Texas's anti-SLAPP provisions, which create a procedural framework that might very well address how the privilege

19

ought to apply in state court. *See generally Klocke*, 936 F.3d 240. And in federal court, the privilege might apply via procedures akin to those applicable in cases involving qualified immunity. As this discussion is already considerably beyond the parties' briefing, the Court will say no more on the topic.

**3.**    *Making its best* Erie *guess, the Court concludes that an absolute privilege applies here*. Becker primarily invokes an absolute privilege under the Texas common law. Dkt. No. 11 at 10-12. The issue of absolute privilege may be properly raised in federal court by a motion to dismiss. *See 50-Off Stores, Inc.*, No. SA-95-CA-159, 1997 WL 790739, at *6. Doing its best to rule as the Texas Supreme Court would, this Court agrees that this privilege bars Newton's claims under the narrow circumstances present here. *See, e.g.*, *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019) ("If the Texas Supreme Court has not ruled on an issue, we make an *Erie* guess, predicting what the Texas Supreme Court would do if faced with the same facts.") (cleaned up).

With respect to absolute privilege under Texas law: "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." *Hurlbut*, 749 S.W.2d at 767 (quoting Restatement (Second) of Torts § 588 (A.L.I. 1977)). "An absolute privilege is more properly thought of as an immunity because it is based on the personal position or status of the actor." *Id*. at 768 (citing W. Keeton, *Prosser & Keeton on the Law of Torts,* § 16 at 109 (5th Ed.1984)). "It is well-settled that communications made in the course of a judicial proceeding may not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *Thomas v. Bracey*, 940 S.W.2d 340, 342-43 (Tex. App.—San Antonio 2017, no writ) (citing

*James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)). "This absolute privilege has been extended to communications made in *contemplation of and preliminary to* judicial proceedings." *Id*. at 343 (citation omitted) (emphasis added).

It is, as best this Court can ascertain, a matter of first impression whether an absolute privilege applies here to Becker's statements in her letter to the TBLE preliminary to the Character and Fitness hearing. But as Becker notes, and Newton doesn't dispute, the TBLE is, according to its own website, "the 'judicial agency responsible for determining that applicants seeking to be licensed to practice law in Texas meet the qualifications set by the Supreme Court of Texas' including having good moral character and fitness." Dkt. No. 14 at 1-2 (quoting Texas Board of Legal Examiners, https://ble.texas.gov/home (last visited Jun. 18, 2026)). "Judicial power is the power conferred upon a public officer to adjudicate the rights of individual citizens by construing and applying the law." *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex. 1985) (citation omitted). The TBLE construes and applies the Rules Governing Admission to the Bar of Texas, rules which have the force of statutes, and it therefore surely is at least a quasi-judicial body, and proceedings to determine admission to the Texas bar are likewise, at a minimum, quasi-judicial when they involve a hearing like the one held here. *See Kastner v. Texas Bd. of L. Examiners*, 408 F. App'x 777, 779 (5th Cir. 2010) ("State bar admissions determinations are judicial proceedings.") (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)). As statements made in contemplation of or preliminary to judicial or quasi-judicial proceedings, Becker's statements are therefore protected by the privilege.

There is a further reason to conclude that the absolute privilege applies here. The Austin Court of Appeals has explained that the TBLE "administers and interprets[] the [Rules Governing Admission to the Bar of Texas]." *Venkatraman v. Tex. Bd. of Law Examiners*, No.

21

03-22-00519-CV, 2024 WL 2787271, at *3 (Tex. App.—Austin 2024, pet. denied) (mem. op.) (citing *Board of Law Exam'rs v. Stevens*, 868 S.W.2d 773, 776 (Tex. 1994)). In that same opinion, the Austin Court of Appeals also explained that TBLE decisions are subject to judicial review in state district court, and courts review them subject to the substantial-evidence standard of review. *Id*. Meaning, proceedings in the TBLE like those presented here plainly invite witness statements that would be made "in contemplation of and preliminary to judicial proceedings," where those judicial proceedings would be any suit for judicial review of a TBLE determination. *Thomas*, 940 S.W.2d at 342-43.

A third justification supports the Court's conclusion. The Austin Court of Appeals has also explained the relevant considerations when examining whether the absolute privilege applies with respect to statements made in quasi-judicial proceedings:

> Factors that have been identified as indicative that a governmental commission has quasi-judicial powers include the power to exercise judgment and discretion, the power to hear and determine facts, the power to make binding orders and judgments, the power to affect the personal or property rights of private persons, the power to compel the attendance of witnesses, the power to examine witnesses and hear the litigation of issues in a hearing, and the power to enforce decisions or impose penalties. *City of Austin v. Evans*, 794 S.W.2d 78, 83 (Tex. App.—Austin 1990, no writ). A governmental body need not exhibit all of the powers listed above to be invested with quasi-judicial authority.

*Tucker v. Austin Am. Statesman*, No. 03-06-00437-CV, 2007 WL 1237969, at *4 (Tex. App.—Austin 2007, pet. denied) (*City of Austin v. Evans,* 794 S.W.2d 78, 83 (Tex.App.—Austin 1990, no writ)). Here, the majority, if not all, of these factors are satisfied, as demonstrated by the TBLE's undisputed authority to exercise judgment and discretion to decide matters of licensure, hear and determine facts on that issue, make binding decisions, affect personal rights with respect to licensure, conduct hearings, and enforce decisions and impose sanctions. Under this test as well, Becker's statements are privileged. A review of the TBLE's enabling statutes

22

corroborates this conclusion, as they specify that the TBLE is an appendage of The Supreme Court of Texas that performs investigative and decisional functions on its behalf and under the Court's authority and supervision. *See generally* Tex. Gov't Code § 82.001 *et seq*.

More specifically, Texas Government Code § 82.004 provides that the TBLE, "acting under instructions of the supreme court as provided in this chapter, shall determine the eligibility of candidates for examination for a license to practice law in this state." *See also Unglaub v. Bd. of L. Examiners of State of Tex.*, 979 S.W.2d 842, 845 (Tex. App.—Austin 1998, pet. denied) ("The Texas Supreme Court maintains the exclusive authority to issue licenses to applicants seeking admission to the State Bar of Texas. Tex. Gov't Code Ann. § 82.021 (West 1998). The Board, however, acting pursuant to the authority of the supreme court, supervises bar admissions and thereby plays a key role in maintaining the integrity and character of the Texas Bar. The supreme court vests the Board with considerable discretion in evaluating applicants based upon the promulgated admission standards.") (citation omitted). Thus, the TBLE's Character and Fitness determinations are "judicial proceedings" or "quasi-judicial proceedings" in which the authority to investigate and decide an issue is exercised.

This determination is further supported by both federal and Texas precedent. The Fifth Circuit has stated outright that "[s]tate bar admissions determinations are judicial proceedings." *Kastner*, 408 F. App'x at 779. One federal district court that spoke to the issue wrote that "courts treat a grievance or disciplinary proceeding before a state bar association as a 'quasi-judicial proceeding' and recognize absolute privilege against suit for statements made in the course of the proceeding, a privilege more accurately characterized as an immunity." *Diddel v. Davis*, No. CV H-04-4811, 2006 WL 8444647, at *5 (S.D. Tex. Jan. 30, 2006) (collecting and discussing various cases in federal and Texas courts applying Texas law).

One Texas decision, *Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.*, is particularly instructive. 291 S.W.3d 448 (Tex. App.—Fort Worth 2009, no pet.). There, in analyzing several cases involving the application of absolute privilege to quasi-judicial proceedings, the court explained that "[a] governmental entity's power to decide a controversy presented by an allegedly defamatory statement is a key factor in determining whether the defamatory statement relates to the exercise of quasi-judicial power." *Id*. at 452. If the governmental entity has the power to decide a controversy presented by an allegedly defamatory statement, then the absolute privilege applies; if not, then conditional privilege applies. *Id*. at 452-53. The opinion notes several Texas cases that spoke to the issue and concludes that the entity's power to make a decision based on the allegedly defamatory statement is key to deciding the issue of privilege. *See id*. It thus explains that "[the Supreme Court of Texas] held in *Reagan* that the Board of Insurance Commissioners exercised quasi-judicial power when it decided whether to issue an insurance sales license to an applicant." *Id*. at 453 (citing *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 913 (1942)). "Similarly, a police department's internal affairs division exercised quasi-judicial power when addressing a complaint made by a citizen against an officer because the division had the power to determine whether the officer should be disciplined." *Id*. (citing *Putter v. Anderson*, 601 S.W.2d 73 (Tex. App.—Dallas 1980, writ ref'd n.r.e.)).

Newton's allegations of malice do not alter this Court's conclusion regarding the absolute privilege. *Hurlbut*, 749 S.W.2d at 768 ("The distinction between absolute and conditional privileges significant to our present case is that an absolute privilege confers immunity regardless of motive whereas a conditional privilege may be lost if the actions of the defendant are motivated by malice."). Importantly, "[i]n Texas, the absolute privilege is [ ] extended to

quasi-judicial proceedings and other limited instances in which the benefit of the communication to general public outweighs the potential harm to an individual." *Shell Oil Co.*, 464 S.W.3d at 655 (citation omitted). The public interest in encouraging reporting about potential Texas bar applicants is substantial. It outweighs the risk to applicants because the risk of false reporting is minimal and a victim of a false report is not without recourse. Generally, although "abuse of the absolute privilege is possible," in the ordinary case "it is limited because the speaker will generally still be subject to the risk of criminal prosecution for perjury or obstruction of justice." *Shell Oil Co.*, 464 S.W.3d at 655 (citation omitted). Here, had the TBLE decided to deny Newton licensure, he presumably could have sued in state district court in connection with that denial, and in any such proceeding raised his concerns about the veracity of Becker's reporting. Likewise, Newton could presumably lodge a complaint with the state bar for any jurisdiction in which Becker is licensed. The point of noting these avenues of recourse is not to further encourage multiplication of proceedings but rather to note that someone in Newton's position is not without recourse, assuming his allegations of conspiracy or false reporting rise beyond the level of rank speculation.

For the reasons provided herein, the absolute privilege applies to Becker's letter, and Newton's suit on the basis of statements made in that letter is absolutely barred.

## Conclusion

For the reasons discussed above, it is recommended that the Motion to Dismiss, Dkt. No. 11, be **GRANTED**.

\*     \*     \*

The Court offers some final words about this litigation, as the Court has concerns about whether certain allegations and arguments have been lodged in good faith.

25

This Court is not the first court to note its concerns along these lines. In *Newton v. City of Atchison*, No. 23-2153-JWB-ADM, 2024 WL 1344427, at *5 (D. Kan. Mar. 29, 2024), *objections overruled sub nom*. *Newton v. City of Atchison, Kansas*, No. 23-2153-JWB, 2024 WL 2272565 (D. Kan. May 20, 2024), the Magistrate Judge noted that Newton in that litigation issued a subpoena to require "that Becker answer 168 written deposition questions under oath and provide documents responsive to four document requests." The Magistrate Judge then concluded that the discovery Newton sought from Becker was wholly irrelevant to the litigation, and that the Judge "will not condone Newton's attempt to use discovery in th[at] lawsuit to pursue a *personal vendetta*" against Becker "that is in no way connected to his current feud with the City." *Id*. at *6 (emphasis added). Although this Court is far from a position in which to reach any final conclusions, the Court agrees that this litigation bears some red flags.

Federal Rule of Civil Procedure 11 places on parties a *continuing obligation* to ensure, "after an inquiry reasonable under the circumstances," that arguments and positions advocated are "not being presented for any improper purpose," that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation," and that " legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11. Courts may raise Rule 11 issues *sua sponte*. *Id*. at (c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).").

Informing suspicions that this litigation bears hallmarks of a vendetta, significant questions about the statute of limitations persist. *See* Dkt. No. 26 at 5 ("The Court . . . has significant questions about whether Newton's theory of timeliness passes muster, and the Court

is loath to expend its limited resources taking up matters on the merits in a case that might be time-barred at the outset"). Based on matters discussed in the Court's prior Oder, *see* Dkt. No. 26, the Court suspects that the case could not survive a searching statute-of-limitations inquiry. The issue is not (yet) presented by the parties. The Court in its discretion therefore declines to address it at this juncture. But Newton's allegations and arguments surrounding the timing of this litigation raise a a red flag.

There are also serious questions about Newton's allegations of malice. Were it appropriate at this juncture to evaluate those allegations under federal pleading standards and a Rule 12(b)(6) rubric, the allegations would very likely fall short.

Moreover, § 73.001 of the Texas Civil Practice & Remedies Code defines libel as defamation "in written or other graphic form that . . . tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury." Newton alleges financial harm stemming from the delay necessitated by the TBLE investigation, but the investigation was likely independently warranted based on non-defamatory statements in the letter. And as for public hatred, contempt, ridicule, or damage to his reputation, Newton passed the character and fitness examination, which seems to indicate that any harm resulting from Becker communicating to the TBLE was *de minimus* at best.

Moreover, actual malice in defamation cases focuses on the defendant's attitude towards the truth of the statement at issue, which is not necessarily equivalent to the defendant's attitude toward the plaintiff. *See Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016). "Actual malice in [the defamation] context does not mean bad motive or ill will." *Id*. Rather, it means that a

27

statement was made with knowledge of its falsity or with reckless disregard for its truth. *Huckabee v. Time Warner Entm't Co.,* 19 S.W.3d 413, 420 (Tex. 2000). Therefore, if malice were at issue here in a motion-to-dismiss posture where the pleadings are taken as true, the Court would likely find that the complaint fails to allege malice as to the truth of matters asserted. *See, e.g., Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005) (questioning whether allegations of ill will and speculation about some untoward purpose supply evidence of actual malice).

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the

proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 18th day of June, 2026.

_____

**RICHARD B.  FARRER**
**UNITED STATES MAGISTRATE JUDGE**